**IN THE UNITED STATES DISTRICT COURT
FOR THE SOURTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MCP IP, LLC, | : | |
| | : | |
| Plaintiff, | : | **Case No. 2:21-cv-0581** |
| | : | |
| v. | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| .30-06 OUTDOORS, LLC, and | : | **Magistrate Judge Chelsey M. Vascura** |
| DAIBOW INC., | : | |
| | : | |
| Defendants | : | |

## OPINION & ORDER

This matter is before the Court on Plaintiff MCP IP, LLC's Motion for Default Judgment (ECF No. 39). For the reasons that follow, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**. A **DEFAULT JUDGMENT** is **GRANTED** against Defendants .30-06 Outdoors, LLC, and Daibow Inc., on all counts. The requested **PERMANENT INJUNCTION** is **DENIED** on Plaintiff's patent claims and is **GRANTED** on its trademark claims. An evidentiary hearing will be scheduled to determine an appropriate damages award.

## I.  BACKGROUND

### A.  MCP IP's Patents and Trademarks

MCP IP is the owner of various U.S. patents and trademarks. (ECF No. 1 ¶ 10). It filed this lawsuit on February 9, 2021, invoking this Court's jurisdiction under the federal patent and trademark laws and 28 U.S.C. §§ 1331, 1338(a), and 1367(a). (ECF No. 1 ¶¶ 4–5). The action arises from alleged infringement of several patents and trademarks related to archery equipment, committed by Defendants Daibow and .30-06 Outdoors.

In this case, MCP IP asserts ownership of twelve utility patents (the "Asserted Utility Patents") and two design patents (the "Asserted Design Patents"). (*Id.* ¶¶ 12–25). A summary of these asserted patents is presented in the following table:

| Type | Patent No. | Patent Title | Issue Date | Exhibit (ECF) |
|------|-----------|--------------|-----------|---------------|
| Utility | No. 8,950,388 | Swivel cable guard | February 10, 2015 | No. 1-7 |
| Utility | No. 9,303,946 | Swivel cable guard | April 5, 2016 | No. 1-9 |
| Design | No. D884,818 | Archery bow stabilizer | May 19, 2020 | No. 1-11 |
| Utility | No. 8,683,989 | Archery bow cam | April 1, 2014 | No. 1-13 |
| Utility | No. 9,354,017 | Archery bow cam | May 31, 2016 | No. 1-15 |
| Utility | No. 9,909,831 | Archery bow cam | March 6, 2018 | No. 1-17 |
| Utility | No. 8,505,526 | Archery bow | August 13, 2013 | No. 1-19 |
| Utility | No. 9,389,040 | Archery bow | July 12, 2016 | No. 1-21 |
| Utility | No. 9,851,169 | Archery bow | December 26, 2017 | No. 1-23 |
| Utility | No. 8,622,052 | Archery bow grip | January 7, 2014 | No. 1-25 |
| Design | No. D639,888 | Archery bow grip | June 14, 2011 | No. 1-27 |
| Utility | No. 8,402,960 | Archery bow | March 26, 2013 | No. 1-29 |
| Utility | No. 8,671,929 | Archery bow | March 18, 2014 | No. 1-31 |
| Utility | No. 10,175,021 | Archery bow | January 8, 2019 | No. 1-33 |

In addition, MCP IP asserts common-law trademark rights in the marks "EHS" and "NANO" (the "Asserted Trademarks"), which are used to identify the source of MCP IP's stabilizer technology on its compound bows. (ECF No. 1 ¶ 26). According to the Complaint, the EHS and NANO marks have "remained in continuous and widespread use in commerce in the United States since at least as early as November 2, 2017." (*Id.* ¶¶ 27–28). On December 18, 2020,

MCP IP filed applications for trademarks that, as of the filing of the Complaint, were pending with the United States Patent and Trademark Office ("USPTO"). (*Id.*).[1]

## B. Daibow

Per the Complaint, Daibow is a corporation organized and existing under the laws of the State of Colorado. (ECF No. 1 ¶ 3). Daibow allegedly "manufactures or contracts with Ningbo Beilun Topoint Outdoor Sports Co., Ltd. ("Topoint") to manufacture archery equipment in Zhejiang, China and imports such archery equipment into this Judicial District . . . for further distribution." (*Id.*). MCP IP alleges that "Daibow has had and continues to have . . . an 'exclusive' partnership arrangement with .30-06 to distribute Daibow compound bows and other archery-related accessories." (*Id.*).

Initially, MCP IP was unable to serve Daibow. (ECF No. 16 at 2). MCP IP was informed that Daibow had an incorporation address of 3525 Jackson Street, Denver, Colorado 80205. (ECF No. 1 ¶ 3).[2] However, the process server's attempts to serve Daibow were unsuccessful: "all reasonable inquiries suggest the subject has never lived at the [Denver] address, or is not known by the current residents." (ECF No. 16-3 (affidavit of non-service)). The current resident of the Denver address stated she had lived there since 1980 and was unfamiliar with Daibow or its registered agent, Leijun Dai. (*Id.*).

---

[1] The USPTO subsequently granted MCP IP's application for the EHS mark on June 22, 2021, Registration No. 6,396,769. (ECF No. 39-1 at 4). The Court takes judicial notice that MCP IP's application for the NANO mark, Serial No. 90394461, was "abandoned" on August 27, 2021, according to the USPTO's public database (available at https://tsdr.uspto.gov/).

[2] Daibow lists this Denver address in its publicly accessible owner's manuals. (ECF No. 16 at 1; *see* ECF No. 1-4 at 1; No. 1-6 at 1). It also appears in the Colorado Secretary of State's summary report for Daibow Inc. (ECF No. 16-2).

Having been unable to discern a valid address for Daibow, MCP IP sought the Court's permission to effect service of process via the alternative means of publication or email. (ECF No. 16). The Court granted MCP IP's request to serve Daibow by email since "Daibow's apparent misrepresentations as to its place of business to the Colorado Secretary of State have made it impossible to serve." (ECF No. 17 at 9). Because MCP IP in the past had communicated effectively with Mr. Dai at his last known email address, and because a recent email to this address from MCP IP's counsel had generated a successful delivery receipt, the Court determined that "service via this email address [was] reasonably calculated to apprise Daibow of the claims and provide it an opportunity to respond." (*Id.* at 2, 8–9).

On March 30, 2021, MCP IP served Daibow via email, with a response deadline of April 20, 2021. (ECF No. 18). On April 4, 2021, a "leijun dai" downloaded the Summons and Complaint from the Secure Share site of MCP IP's counsel. (ECF No. 27-1). Daibow failed to file a responsive pleading. Consequently, on April 28, 2021, MCP IP applied to the Clerk for entry default against Daibow pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 27). The Clerk entered Daibow's default on May 4, 2021. (ECF No. 30).

### C.  .30-06 Outdoors

.30-06 Outdoors, according to the Complaint, is a limited liability company organized and existing under the laws of the State of Ohio, with a principal place of business in Columbus. (ECF No. 1 ¶ 2). As mentioned, .30-06 Outdoors allegedly has an "exclusive" partnership with Daibow to distribute Daibow's archery products. (*Id.* ¶ 3).

Service on .30-06 Outdoors was accomplished on February 12, 2021. (ECF No. 8). Shortly after, counsel for MCP IP was contacted by Maier & Maier, PLLC, indicating it would be representing .30-06 Outdoors. (ECF No. 13). .30-06 Outdoors and MCP IP stipulated to an

extension of the responsive pleading deadline. (*Id.*). The Court then granted .30-06 Outdoors three more extensions to file its answer (ECF Nos. 15, 21, 23), the last being opposed by MCP IP.

On April 23, 2021, counsel for .30-06 Outdoors filed a motion to withdraw (ECF No. 24), which the Court granted on May 17, 2021. (ECF No. 31). Because a limited liability company can proceed only through licensed counsel, the Court ordered .30-06 Outdoors to retain a trial attorney within thirty days. (*Id.*, citing *SEC v. Merklinger*, 489 F. App'x 937, 939 (6th Cir. 2012)). In addition, the Court granted .30-06 Outdoors additional time to respond to the Complaint, until June 21, 2021. (*Id.*).

.30-06 Outdoors failed to retain counsel as directed, and it did not file a responsive pleading. Consequently, on June 22, 2021, MCP IP applied to the Clerk for entry of default. (ECF No. 33). The Clerk entered default by .30-06 Outdoors on June 25, 2021. (ECF No. 36).

### D.  Motion for Default Judgment

On July 8, 2021, MCP IP moved for default judgment against both Defendants. (ECF No. 39). MCP IP requested the following relief: (1) to enjoin each Defendant "and all of its officers, agents, affiliates, servants, employees, and attorneys, and all other persons in active concert or participation with them, permanently from making, using, offering to sell, selling, and importing products that embody the inventions claimed in [the Asserted Utility Patents and Asserted Design Patents] or any colorable imitations thereof"; (2) to award "reasonable royalty damages" against each Defendant for infringement of the Asserted Utility Patents; (3) to award "total profits" against each Defendant for infringement of the Asserted Design Patents; and (4) to enjoin ".30-06 and all of its officers, agents, [*etc.*], permanently from using in commerce [the Asserted Trademarks] or any colorable imitations thereof." (ECF No. 39-1 at 1–2). MCP IP filed the Declaration of Richard

Bero in support of its damages request. (ECF Nos. 39-2 & 41). Neither Defendant responded to the Motion. Accordingly, the matter is ripe for adjudication.

## II.  DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 governs defaults and default judgments. The first step is entry of default. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default is entered, a party may take the second step by moving for default judgment. Fed. R. Civ. P. 55(b). At that stage, "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Arthur v. Robert James & Assocs. Asset Mgmt., Inc*., 2012 WL 1122892, at *1 (S.D. Ohio Apr. 3, 2012) (internal quotation marks omitted).

"An entry of default does not automatically entitle the plaintiff to a default judgment." *Methe v. Amazon.com.dedc, LLC*, 2019 WL 3082329, at *1 (S.D. Ohio July 15, 2019). "The plaintiff must still show that, when all of the factual allegations in the complaint are taken as true, the defendant is liable for the claim(s) asserted." *Id.*; *see also F.C. Franchising Sys., Inc. v. Schweizer*, 2012 WL 1945068, at *3 (S.D. Ohio May 30, 2012) ("[I]t remains for the district court to consider whether the unchallenged facts constitute a cause of action, since a party in default does not admit mere conclusions of law." (quoting *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010))).

When considering whether to enter default judgment, the Sixth Circuit instructs courts to consider the following factors:

> (1) possible prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) possible disputed material facts; (6) whether the default was due to excusable neglect; and (7) the preference for decisions on the merits.

*Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002) (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990); and *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193–94 (6th Cir. 1986)). The Court will address these factors in a slightly different order, beginning with the sufficiency of the Complaint and the merits of the claims.

### A. Sufficient and Meritorious Claims

#### 1. *Patent Infringement Claims*

In Counts I through XIV of the Complaint, MCP IP alleges Defendants "have imported, offered for sale, sold[,] and continue to import, offer for sale, and sell certain hunting, target, and/or competition bows" that infringe claims of the Asserted Utility Patents and Asserted Design Patents. (ECF No. 1 ¶¶ 44–144). Defendants' infringing products include the "Daibow Acuity bow" (Counts I–II & XII–XIV), the "Topoint TP640 stabilizer" and "6/9 Navi Carbon stabilizer" (Count III), the "Topoint M1 / Daibow M1 bow" (Counts IV–VI & X–XI), and the "Daibow Trigon bow" (Counts VII–IX).

Under 35 U.S.C. § 271, a defendant is liable for direct patent infringement when the defendant "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." To state a viable patent infringement claim, a plaintiff must: "(i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013) (citing *Phonometrics, Inc. v. Hosp. Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)).

Taking the facts stated in the Complaint as true, this Court finds that the Complaint states sufficient and meritorious claims for patent infringement. First, MCP IP alleges ownership of the Asserted Utility Patents and the Asserted Design Patents. (ECF No. 1 ¶¶ 12–25). Each of Counts I through XIV names Daibow and/or .30-06 Outdoors as the infringing Defendants, lists the patent being infringed, and identifies the relevant statute as 35 U.S.C. § 271(a). (*Id.* ¶¶ 44–144). Finally, MCP IP provides an exhibit for each count of patent infringement, comparing Defendants' products to the patents' claim elements to demonstrate how Defendants allegedly infringe the patents. The following table summarizes these allegations:

| Count | Patent being Infringed | Exhibit Demonstrating Infringement (ECF) |
|---|---|---|
| Count I | No. 8,950,388 | No. 1-8 |
| Count II | No. 9,303,946 | No. 1-10 |
| Count III[3] | No. D884,818 | No. 1-12 |
| Count IV | No. 8,683,989 | No. 1-14 |
| Count V | No. 9,354,017 | No. 1-16 |
| Count VI | No. 9,909,831 | No. 1-18 |
| Count VII | No. 8,505,526 | No. 1-20 |
| Count VIII | No. 9,389,040 | No. 1-22 |
| Count IX | No. 9,851,169 | No. 1-24 |
| Count X | No. 8,622,052 | No. 1-26 |
| Count XI | No. D639,888 | No. 1-28 |
| Count XII | No. 8,402,960 | No. 1-30 |

---

[3] Count III is pled against .30-06 Outdoors only. All other counts in this table are pled against both Defendants.

| **Count XIII** | No. 8,671,929 | No. 1-32 |
| **Count XIV** | No. 10,175,021 | No. 1-34 |

By defaulting, Defendants have admitted these allegations. *See NOCO Co. v. Shenzhen Xinshengfeng Trading Co.*, 2022 WL 1236421, at *2 (N.D. Ohio Apr. 27, 2022). Additionally, the Complaint discusses Defendants' pattern of copying MCP IP's owner manuals, the Archery Trade Association's revocation of Topoint's membership for intellectual property violations, and Defendants' persistence after receiving cease-and-desist letters from MCP IP—all tending to show the infringement was intentional. (ECF No. 1 ¶¶ 29–43). Reviewing MCP IP's allegations and exhibits, the Complaint sets out facts that, taken as true, state sufficient and meritorious claims for patent infringement.

### 2. Trademark Infringement Claims

Counts XV through XVIII of the Complaint concern improper use of MCP IP's "EHS" and "NANO" marks. MCP IP alleges that .30-06 Outdoors "has offered for sale and sold and continues to offer for sale and sell certain hunting, target, and/or competition bow accessories including, without limitation, stabilizers sold under the Navi Stabilizer brand, which infringe and unfairly compete" with the EHS and NANO marks. (*Id.* ¶¶ 145–178). These claims sound under the Lanham Act, 15 U.S.C. § 1125(a); O.R.C. § 4165.02; and the common law.[4] No trademark claims are stated against Daibow.

---

[4] If MCP IP states a claim under the Lanham Act, the other violations follow. "Both Ohio and federal courts have recognized that the same analysis applies to claims under Ohio's statutory and common law of unfair competition and the Lanham Act." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 626 n.2 (6th Cir. 2002) (citing *Leventhal & Assocs., Inc. v. Thomson Cent. Ohio*, 714 N.E.2d 418, 423 (Ohio Ct. App. 1998); and *Barrios v. Am. Thermal Instruments, Inc.*, 712 F. Supp. 611, 613–14 (S.D. Ohio 1998)).

"A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark 'is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013) (quoting *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 515 (6th Cir. 2007)). While the first two elements are relatively straightforward, the "confusion" element is more complex. Eight factors set forth in *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264 (6th Cir. 1985), aid the courts in determining whether consumers are likely to be confused about the source of a mark:

> (1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines or services.

*AWGI, LLC v. Atlas Trucking Co.*, 998 F.3d 258, 264–65 (6th Cir. 2021). "There is no requirement that each factor be established in each case, nor do these factors imply 'mathematical precision' or a particular balancing formula." *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 592 (6th Cir. 2015).

Taking the facts in the Complaint as true, this Court finds sufficient and meritorious claims for trademark infringement by .30-06 Outdoors. First, MCP IP states it is the owner of the Asserted Trademarks. (ECF No. 1 ¶ 26).[5] Second, MCP IP asserts that, without permission, .30-06 Outdoors has sold bow accessories in commerce branded with the Asserted Trademarks. (*Id.* ¶¶ 147, 156,

---

[5] With respect to the EHS mark, MCP IP's claimed ownership now is reinforced by registration with the USPTO. *See supra* note 1. Though the NANO mark was "abandoned," this does not undermine MCP IP's common-law theory of ownership. "[A] trademark need not be registered in order to be protected, as long as it is capable of registration under section 2 [of the Lanham Act, 15 U.S.C. § 1052]." *G.M.L., Inc. v. Mayhew*, 188 F. Supp. 2d 891, 895 (M.D. Tenn. 2002) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68 (1992)).

164, 173). More specifically, MCP IP alleges that .30-06 Outdoors advertises the 6/9 Navi Carbon Stabilizers as having "EHS NANO Configured Dampening Technology." (*Id.*; *see* ECF No. 1-37 (product catalog)). Finally, the Complaint alleges that .30-06 Outdoors's unauthorized use of the marks likely will result in confusion as to the origin of .30-06 Outdoors's goods and the affiliation, sponsorship, or connection between MCP IP and .30-06 Outdoors. (ECF No. 1 ¶¶ 149, 166).

In defaulting, "defendant admits that its use of plaintiff's trademarks . . . has caused and will continue to cause confusion among consumers regarding the origin and quality of the goods offered by defendant." *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 673–74 (N.D. Ohio 2016). For good measure, MCP IP's claims of consumer confusion find support from several of the "*Frisch*" factors. According to the Complaint, MCP's marks are strong ones, having "remained in continuous and widespread use in commerce in the United States since at least as early as November 2, 2017." (*Id.* ¶¶ 27–28). The infringing products are closely related to MCP IP's, as they "directly compete" with products sold by MCP IP's authorized licensees. (*Id.* ¶¶ 149, 158, 166, 175). An exhibit to the Complaint (ECF No. 1-37) shows .30-06 Outdoors's product catalog using the exact marks ("EHS NANO") in the context of stabilizing technology, just as MCP IP does. Furthermore, the allegations mentioned above regarding Defendants' pattern of copying from MCP IP, loss of membership in the Archery Trade Association, and persistence after receiving cease-and-desist letters all tend to support the claims of "bad faith" by .30-06 Outdoors in using the marks. (ECF No. 1 ¶¶ 29–43, 150, 159, 167, 176).

Taking all these allegations as true, MCP IP's Complaint is sufficient to state meritorious claims for trademark infringement by .30-06 Outdoors. This weighs in favor of default judgment.

### B. Prejudice to Plaintiff

Having found MCP IP's claims sufficient and meritorious, the Court turns to the remaining default judgment factors listed in *Russell*. The next to consider is possible prejudice to MCP IP if default judgment is not granted.

MCP IP avers that Defendants' conduct continues to cause it substantial damage, as Defendants' infringement of MCP IP's patent and trademark rights is ongoing. (ECF No. 39-1 at 8, 14 (citing Complaint)). MCP IP filed this suit approximately a year and a half ago, and neither Defendant has responded. Were MCP IP to file another lawsuit, all indications are that it would return to this stage: default judgment. Courts find the prejudice factor to be satisfied under such circumstances. *See, e.g.*, *Toler v. Glob. Coll. of Nat. Med., Inc.*, 2016 WL 67529, at *7 (E.D. Mich. Jan. 6, 2016). Clearly, MCP IP will be prejudiced if its motion is denied. This factor weighs in favor of default judgment.

### C. Amount of Money at Stake

Next, the Court considers the amount of money at stake. MCP IP's expert witness has opined on the total damages resulting from Defendants' patent infringement. (ECF No. 41 at 19–20).[6] These amounts are not insignificant; nor would they score among the highest of patent infringement awards.[7] The Court will treat this factor as neutral.

---

[6] The Court permitted MCP IP to seal Mr. Bero's Declaration, as it contains confidential and proprietary business information. (*See* ECF No. 40). To keep this Opinion from being sealed by extension, the Court avoids restating the precise damages figures calculated by Mr. Bero.

[7] *See* Landan Ansell, *et al.*, *2018 Patent Litigation Study*, PricewaterhouseCoopers (May 2018), https://www.pwc.com/us/en/forensic-services/publications/assets/2018-pwc-patent-litigation-study.pdf (accessed Aug. 5, 2022).

### D.  Possible Disputed Material Facts

As for the possibility of disputed material facts, Defendants have given the Court nothing to evaluate. Daibow has been absent from this case entirely, and .30-06 Outdoors has not participated aside from seeking extensions of the pleading deadline. Defendants' silence continued through the responsive pleading deadline, at which point they "forfeited their right to dispute any of Plaintiff's allegations by not answering the Complaint." *Tomlinson v. E. Recovery & Remediation Grp., LLC*, 2019 WL 1380313, at *4 (E.D. Mich. Mar. 27, 2019). Given that Defendants have yet to engage with MCP IP's claims, it seems unlikely Defendants would dispute the factual allegations even if provided the opportunity. Thus, this factor weighs in favor of default judgment.

### E.  Default Due to Excusable Neglect

Excusable neglect did not play a role in Defendants' default in this case. Despite notice of the lawsuit, Defendants have failed to appear or otherwise defend. .30-06 Outdoors was served properly, obtained counsel who corresponded with MCP IP's attorney, and was given repeated extensions to file a responsive pleading. (*See* ECF Nos. 13, 15, 21, 23, 29, 31). Daibow's misrepresentation of its address complicated service of process, but it ultimately was served via email. (ECF No. 18). After a "leijun dai" downloaded the Summons and Complaint, communication ceased. (ECF No. 27-1; No. 39-1 at 5). All these facts are indicative of actual disregard rather than excusable neglect.

### F.  Preference for Decisions on the Merits

Finally, the Court must consider "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1472. Inevitably, this factor is in tension with default judgment. Where trial on the merits is not attainable, however, courts

recognize that this policy preference must yield to the needs of litigants actually before them. *See, e.g.*, *Toler*, 2016 WL 67529, at *9 ("[W]hile public policy favors resolution of cases on the merits, Defendants and their Counsel have consistently ignored opportunities for a merits-based resolution by refusing to respond in this matter . . . . 'Effective judicial administration requires that at some point disputes be treated as finally and definitively resolved.'" (quoting 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2693 (3d ed.))). Since other factors weigh in favor of default judgment, and since a decision on the merits is neither realistic nor attainable in this case, policy preferences will not preclude default judgment. MCP IP's Motion for Default Judgment (ECF No. 39) is **GRANTED** as to liability, on all counts.

## III.  DAMAGES AND REMEDIES

Having found default judgment proper, the Court next must consider damages and other available remedies. In its Motion, MCP IP seeks four forms of relief: (1) a permanent injunction against Defendants' further infringement of the Asserted Utility Patents and Asserted Design Patents; (2) reasonable royalty damages for Defendants' infringement of the Asserted Utility Patents; (3) total profits damages for Defendants' infringement of the Asserted Design Patents; and (4) a permanent injunction against .30-06 Outdoors's use of the Asserted Trademarks in commerce. (ECF No. 39-1 at 1–2). The Court will address each request, beginning with monetary damages.

### A.  Damages

Federal Rule of Civil Procedure 55(b)(2) permits the Court to conduct an evidentiary hearing to determine damages, but it does not require one. *See Vesligaj v. Peterson*, 331 F. App'x 351, 354–55 (6th Cir. 2009) (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). If damages are calculable or liquidated, then the court may forego an evidentiary

14

hearing because the facts establishing damages are not distinct from the facts establishing liability. *See United States v. Di Mucci*, 879 F.2d 1488, 1497–98 (7th Cir. 1989); *Barnes v. Abraham, Inc.*, 2017 WL 5714091, at *2 (S.D. Ohio Nov. 28, 2017) ("A court may determine damages without holding an evidentiary hearing if the damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." (internal quotation marks omitted)). On the other hand, "[w]here damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (internal quotation marks omitted).

Damages for patent infringement are governed by 35 U.S.C. § 284. For utility patents, there are "[t]wo alternative categories of infringement compensation": (1) "the patentee's lost profits"; and (2) "the reasonable royalty [the patentee] would have received through arms-length bargaining." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). The reasonable royalty, which is the method requested by MCP IP, is "merely the floor below which damages shall not fall." *Id.* (quoting *Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1583 (Fed. Cir. 1983)). "The most common method for determining a reasonable royalty is the hypothetical negotiation approach, which 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.'" *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (quoting *Lucent Techs.*, 580 F.3d at 1324). Because such a hypothetical agreement can be difficult to ascertain, courts often turn to the "*Georgia–Pacific* factors" for guidance. *See Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970) (setting out fifteen factors).[8]

---

[8] The factors are as follows:
    1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

In the case of design patent infringement, the infringer "shall be liable to the owner to the extent of his total profit, but not less than $250." 35 U.S.C. § 289. To determine damages under this section, the Supreme Court has provided a two-step analysis: "First, identify the 'article of

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Id.*

manufacture' to which the infringed design has been applied. Second, calculate the infringer's total profit made on that article of manufacture." *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 434 (2016). Where the patent holder also has remedies under other statutory provisions, double recovery is prohibited. 35 U.S.C. § 289.

Here, the requested damages of reasonable royalties and total profits rest entirely on the Declaration of MCP IP's expert, Mr. Bero. (ECF No. 41). Mr. Bero states that he reviewed "limited financial information pertaining to Defendants' infringing products," including .30-06 Outdoors's "Inventory Profitability Report For the Period From Jan 1, 2020 to Apr 30, 2021," and based his opinions on that information. (*Id.* ¶ 8). However, none of the documents reviewed by Mr. Bero is a part of the record in this case. Given the lack of supporting documentation and the admittedly narrow scope of the review, the Declaration alone—thorough as it is—does not permit the Court to assess damages with sufficient certainty.

Thus, on the present record, the Court cannot forego a damages hearing. *Cf. Barnes*, 2017 WL 5714091, at *2; *see also Zinganything*, 158 F. Supp. 3d at 675 ("Even in the context of default judgment, the Court has an obligation to ensure that there is a legitimate basis for any award of damages that it enters."). The Court ultimately may enter a damages award in line with Mr. Bero's conclusions, but not before it has an opportunity to receive documentary evidence and inquire into his methods. For now, the Court **WITHHOLDS** ruling on monetary damages and **REFERS** the matter to the Magistrate Judge, pursuant to Fed. R. Civ. P. 55(b)(2) and 28 U.S.C. § 636(b)(1), for a damages hearing and report and recommendation. *See, e.g.*, *Extreme Tool & Eng'g, Inc. v. Bear Cub Enters.*, 2009 WL 2948467, at *2 (W.D. Mich. Sept. 3, 2009) (granting default judgment on patent claims and referring case for damages hearing).

## B. Permanent Injunctions

### 1. Patent Infringement Claims

Next, the Court will consider MCP IP's request permanently to enjoin Defendants from "making, using, offering to sell, selling, and importing products that embody the inventions claimed" in the Asserted Utility Patents and Asserted Design Patents. (ECF No. 39-1 at 1–2). Because a patent holder's right to exclude others ceases when the patent expires, *see Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 451 (2015), the Court will construe MCP IP's request as seeking to enjoin further infringement during the life of the patents.

Per 35 U.S.C. § 283, courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." The Supreme Court has held that a finding of patent infringement does *not* guarantee injunctive relief; instead, a plaintiff seeking permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *Id.*

Starting with the first factor, this Court is not persuaded by MCP IP's claim that it will suffer irreparable harm without an injunction. (ECF No. 39-1 at 7–8). MCP IP provides a string of cases where some courts have presumed irreparable injury in cases of default (*Id.*); but these are in considerable tension with *eBay* and its progeny. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011) ("We take this opportunity to put the question to rest and confirm that *eBay* jettisoned the presumption of irreparable harm as it applies to determining the

appropriateness of injunctive relief."). MCP IP also asserts that its allegations of irreparable harm without an injunction "are deemed admitted on Defendants' default." (ECF No. 39-1 at 8 (citing Complaint)). As stated above, though, a default *only* admits a defendant's liability. *See Antoine*, 66 F.3d at 110. MCP IP still has the burden to demonstrate its need for an injunction. Without explaining how irreparable harm will occur, MCP IP fails to satisfy this burden.

Nor is this Court persuaded that monetary remedies are inadequate. (ECF No. 39-1 at 9). MCP IP again claims that it has suffered and will continue to suffer "irreparable harm," without further explanation, and argues that Defendants have admitted such by defaulting. (*Id.*). For the same reasons, MCP IP has not met its burden to justify a permanent injunction. *See eBay*, 547 U.S. at 391; *see also Antoine*, 66 F.3d at 110. As an additional note, most (if not all) of the cases MCP IP cites involve practicing entities. MCP IP makes no allegation that it practices its patents; rather, it appears MCP IP is solely a licensor of its intellectual property. (*See* ECF No. 1 ¶ 10). When a plaintiff practices its invention and is "in competition against [the defendant], the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented invention." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). Non-practicing entities, on the other hand, ordinarily can be compensated adequately with monetary damages for infringement. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 650 (Fed. Cir. 2015) (Reyna, J., concurring) ("Where the patentee is an entity that uses patents primarily to obtain licensing fees, its business objectives are premised on monetary relief being sufficient to compensate for infringement."). Although not impossible, "it has been extremely rare for NPEs [non-practicing entities] to be awarded permanent injunctions."[9]

---

[9] Justin M. Sobaje, *Permanent Injunctions for Non-Practicing Entities in Patent Cases*, Foley & Lardner: Blog (Oct. 12, 2018), https://www.foley.com/en/insights/publications/2018/10/permanent-injunctions-for-non-practicing-entities (accessed Aug. 5, 2022).

The remaining factors—balance of hardships and public interest—likely do favor MCP IP. Whether reparable or irreparable, there certainly is harm to MCP IP when its patents are infringed. On the other hand, "the injunction will not unfairly harm Defendant[s], as [they] will simply be prohibited from continuing to deliberately infringe Plaintiff's intellectual property. 'One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.'" *Gillette Co. v. Save & Discount LLC*, 2016 WL 3745764, at *3 (S.D. Ohio July 13, 2016) (quoting *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008)). Additionally, "[t]he public has a strong interest in maintaining the integrity of patents by enjoining infringement." *Id.*[10]

In summary, MCP IP has not satisfied its burden under *eBay* to demonstrate that it will suffer irreparable harm absent an injunction and that monetary remedies are inadequate. MCP IP's request for a permanent injunction on its patent infringement claims is **DENIED**.

### 2.    *Trademark Infringement Claims*

Under the Lanham Act, courts have the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable," to prevent further trademark infringement. 15 U.S.C. § 1116(a); *see Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007). As in the patent context, a plaintiff seeking a permanent injunction on a

---

[10] The public interest can flip when non-practicing entities are involved. "For these firms, an injunction, and the potentially serious sanctions arising from its violation, can be employed as a bargaining tool to charge exorbitant fees to companies that seek to buy licenses to practice the patent. When the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and.an injunction may not serve the public interest." *eBay*, 547 U.S. at 396–97 (Kennedy, J., concurring) (internal citation omitted). There are no indications in the present case, though, that MCP IP is attempting to gain undue leverage.

trademark claim must satisfy the four-factor test in *eBay*. *See Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (applying *eBay* in trademark case).

Starting with the first factor, the Court finds that MCP IP has suffered an irreparable injury from the trademark violations. Unlike a patent claim, the Lanham Act explicitly grants "a rebuttable presumption of irreparable harm upon a finding of a violation . . . in the case of a motion for a permanent injunction." 15 U.S.C. § 1116. "Likewise, Sixth Circuit caselaw holds that no particular finding of . . . irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Microsoft*, 490 F. Supp. 2d at 882 (citing *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999)); *Am. Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 757–58 (E.D. Mich. 2014) (same). "[I]rreparable injury 'ordinarily follows when a likelihood of confusion or possible risk to reputation appears' from infringement or unfair competition." *Id.* at 758 (quoting *Circuit City Stores*, 165 F.3d at 1056). Because this Court has found a likelihood of confusion, *see supra* Section II.A.2, MCP IP has suffered an irreparable injury. Accordingly, this factor weighs in favor of an injunction.

By the same token, this Court finds the remedies available at law are inadequate to redress the damages from continued infringement of the Asserted Trademarks. "[W]here there is a potential for future harm from continuing infringement, there is no adequate remedy at law." *Am. Auto Ass'n*, 995 F. Supp. 2d at 758; *see also Audi*, 469 F.3d at 550. Here, as discussed, MCP IP faces an ongoing risk of consumer confusion, which will not subside absent an injunction. Accordingly, this factor weighs in favor of permanent injunctive relief.

The final two factors both support MCP IP. Balancing the hardships, there is no harm to .30-06 Outdoors since an injunction merely will require it to comply with the Lanham Act, whereas MCP IP faces substantial and irreparable harm if an injunction is denied. *Id.*; *Microsoft*, 490 F.

Supp. 2d at 883. Furthermore, there is no harm to the public in granting a permanent injunction. If anything, preventing consumer confusion benefits the public interest. *Audi*, 469 F.3d at 550; *Am. Auto. Ass'n*, 995 F. Supp. 2d at 758.

For these reasons, the Court finds that a permanent injunction is justified on MCP IP's trademark claims. Defendant .30-06 Outdoors and all of its officers, agents, affiliates, servants, employees, and attorneys, and all other persons in active concert or participation with them, are **PERMANENTLY ENJOINED** from using the Asserted Trademarks ("EHS" and "NANO"), or any colorable imitations thereof, in commerce in the United States.[11]

## IV.  CONCLUSION

For the reasons stated above, MCP IP's Motion for Default Judgment (ECF No. 39) is **GRANTED IN PART** and **DENIED IN PART**. A **DEFAULT JUDGMENT** is entered against Defendants .30-06 Outdoors, LLC and Daibow Inc., on all counts. The requested **PERMANENT INJUNCTION** is **DENIED** as to MCP IP's patent claims and is **GRANTED** as to its trademark claims. A hearing will be held to determine the proper measure of damages, at a date and time to be noticed by the Magistrate Judge. A final judgment entry will follow thereafter.

The Clerk **SHALL** attempt to serve this Opinion & Order on .30-06 Outdoors, LLC, via certified mail to 2484 Creekway Drive, Columbus, OH 43207. Plaintiff's counsel **SHALL** attempt to serve this Opinion & Order on Daibow, Inc., via email to its registered agent, Mr. Leijun Dai, at dlj19751029@163.com, and shall indicate so on the docket.

---

[11] The Complaint pleads that each mark "has remained in continuous and widespread use in commerce in the United States." (ECF No. 1 ¶¶ 27–28 (emphasis added)). Though MCP IP's requested injunction did not specify a geographic scope, the Court has tailored its relief accordingly. *See Allard Enters. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001) ("The first to use a mark in the sale of goods or services . . . gains common law rights to the mark *in the geographic area in which the mark is used*." (emphasis added)).

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 16, 2022**